IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES P. SMITH, | ) |
| Plaintiff, | ) No. 23-cv-4552 |
| v. | ) Judge Jeffrey I. Cummings |
| MIDWEST OPERATING ENGINEERS PENSION FUND, et al. | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James P. Smith brings this action against Midwest Operating Engineers Pension Fund and the Board of Trustees of the Midwest Operating Engineers Pension Fund (collectively, the "Fund") for violations of the Employment Retirement Employee Retirement Income Security Act ("ERISA"). The Fund now moves to dismiss Counts II and III of Smith's amended complaint for failure to state a claim under Rule 12(b)(6). For the reasons set forth below, the Court grants the Fund's motion to dismiss, (Dckt. #20), and dismisses Counts II and III with prejudice.

I.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true

all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Nonetheless, courts are permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II.     BACKGROUND

The following relevant allegations are taken from Smith's amended complaint, (Dckt. #21), and the Pension Plan Document attached to the Fund's motion, (Dckt. #20-2), because it was referenced in Smith's complaint and central to his claims:

James Smith worked at Harry W. Kuhn, Inc. as an operating engineer pursuant to a collective bargaining agreement ("CBA") between Kuhn and the International Union of Operating Engineers Local 150 (the "Union"). (*Id*. ¶10). Pursuant to the CBA, after working in

covered employment for the required number of hours, Smith became a participant in the Fund, "a multiemployer retirement benefit plan, funded through employer contributions." (*Id*. ¶¶6, 11).

On September 25, 2000, Smith suffered an injury to his lower back and legs while working in employment covered by the CBA. (*Id*. ¶12). On January 8, 2001, Smith underwent surgery to correct his injuries and alleviate his pain. (*Id*. ¶13). Unfortunately, the surgery was unsuccessful in mitigating Smith's pain. (*Id*.). On February 6, 2002, the Fund determined that Smith had a "Total and Permanent Disability" under the terms of the "Plan Document."[1] (*Id*. ¶14).

Pursuant to the Plan Document in effect at that time, "Total and Permanent Disability" was defined as:

> A physical or mental condition of a Participant which the Trustees find on the basis of medical evidence to totally and permanently prevent such Participant from engaging in employment, within or without the geographical area covered by this Pension Plan, in work described in the scope of work provisions contained in the Collective Bargaining Agreements entered into between the Union and the Employers.

(*Id*. ¶15). According to Smith, "on information, the Total and Permanent Disability retirement benefit is an optional form of an employee's accrued and vested pension benefit that is actuarially adjusted to reflect its early receipt." (*Id*. ¶16). Smith also alleges, "on information," that the "disability pension is not a welfare benefit subject to discretionary termination." (*Id*. ¶17).

Article XI of the Plan further provides as follows:

> No amendment to the Plan (including a change in the actuarial basis for determining optional or Early Retirement Pension) shall be effective to the extent that it has the effect of decreasing a Participant's Accrued Normal Retirement Pension . . . For purposes of this paragraph, a Plan amendment which has the effect of: (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or

---

[1] The Total and Permanent Disability Pension was renamed to the All Work Total Disability Pension in subsequent amendments to the Plan.

> (ii) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing his Accrued Normal Retirement Pension. In the case of a retirement type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy. In general, a retirement-type subsidy is a subsidy that continues after retirement. Furthermore, **no amendment to the Plan shall have the effect of decreasing a Participant's vested interest determined without regard to such amendment as of the later of the date such amendment is adopted, or becomes effective.**

(*Id*. ¶33; Dckt. #20-2 at 99) (emphasis added).

In March 2002, Smith began receiving monthly disability pension benefits, which continued through mid-2019. (*Id*. ¶¶18-19). The Plan provision governing the disability pension benefits required Smith to present medical evidence demonstrating his continued medical disability each year. (*Id*. ¶21). According to Smith, he was "the only participant receiving a Total and Permanent Disability benefit." (*Id*. ¶28).

On September 19, 2019, Smith was informed that the Fund had determined that he no longer met the criteria for continuing disability pension payments under the Plan, specifically because of the loss of his Social Security Disability Award (which apparently ceased back in 2003). (*Id*. ¶22; Dckt. #20-2 at 2). As a result, the Fund discontinued Smith's disability pension benefits effective October 1, 2019. (*Id*. ¶24). According to Smith, however, the termination decision was made using criteria for a different disability pension and not the disability pension that was awarded to Smith. (*Id*. ¶23). Smith thus appealed the Fund's decision, and on November 5, 2019, the Fund's Appeal Review Panel denied Smith's appeal of the termination of his disability benefits. (*Id*. ¶¶25-26). The Appeal Panel denied Smith's appeal on rehearing on January 8, 2020. (*Id*. ¶20).

On August 4, 2020, Smith filed an action in this Court alleging wrongful denial of benefits under ERISA and seeking to reinstate his benefits. (*Id*. ¶30); *see Smith v. Midwest*

*Operating Engineers Pension Fund et al.,* Case No. 20-cv-4571 (Coleman, J.). On February 28, 2022, Judge Coleman held that the Fund's termination of Smith's benefits was "arbitrary and capricious" because it was based on Smith's lack of Social Security Disability award, which—at that time—was not a condition to the continued receipt of benefits under the Plan. *Smith v. Midwest Operating Eng'rs Pension Fund*, No. 20-cv-04571, 2022 WL 595706, at *7 (N.D.Ill. Feb. 28, 2022) (hereinafter, "*Smith I*") ("In sum, nothing in the Plan's plain language and structure supports the Fund's imposition of an unenumerated requirement conditioning Smith's continued receipt of monthly disability benefits on his maintenance of a Social Security Disability Award.").[2] As such, Judge Coleman entered judgment in favor of Smith and remanded the case to the Fund's Review Panel to "either reinstate Smith's benefits effective October 1, 2019 or explain why Smith's disability ha[d] ceased pursuant to" the Plan.[3] *Id.*

On October 5, 2022, "while the parties were still working through the reinstatement of all of the benefits due," the Fund informed Smith that it had amended the Plan effective July 1, 2022, specifically to indicate that a participant's disability benefits will be terminated if, *inter alia*, the participant "[l]oses the Social Security Disability Award." (Dckt. #21 ¶32; *see also* Dckt. #20-2 at 37). Because Smith's Social Security Disability Award ended in July 2003, the Fund terminated his disability benefits effective October 2022. (Dckt. #21 ¶32). This action

---

[2] At the time of Judge Coleman's opinion, and since October 1, 2004, "in order to *apply* for an All Work Total Disability Pension, a Participant must have been awarded a Social Security Disability Award." *Smith I*, 2022 WL 595706, at *4 (emphasis added).

[3] In his complaint in this action, Smith alleges that Judge Coleman "remanded the matter to the Fund to reinstate [his] benefits." (Dckt. #21-1 ¶31). This is a misrepresentation of Judge Coleman's remand order and, at a minimum, ignores her finding that the fact that "Smith did perform some work as a security guard after being approved for an All Work Total Disability Pension raise[d] the possibility that the Fund could articulate an appropriate basis for terminating Smith's benefits." *Smith I*, 2022 WL 595706, at *7.

followed. In his amended complaint, Smith brings claims for wrongful denial of benefits (Count I), violation of ERISA's anti-cut back rule (Count II), and breach of fiduciary duty (Count III), and he seeks reinstatement of his disability benefits from October 2022 onward.

### III. ANALYSIS

The Fund now moves to dismiss Counts II and III arguing that: (1) Smith's pre-retirement disability benefits are not vested or accrued benefits subject to ERISA's anti-cutback provision; and (2) Smith failed to state a claim for breach of fiduciary duty for a number of reasons. The Court agrees and grants the Fund's motion to dismiss for the following reasons.

**A. Smith has failed to state a claim for violation of ERISA's anti-cutback rule.**

In Count II, Smith asserts that the Fund's amendment to the Plan to require a Social Security Disability Award as a condition to the continued receipt of his Total and Permanent Disability benefits (again, now the All Work Total Disability benefits) violates ERISA's anti-cutback rule. The anti-cutback rule provides that "[t]he *accrued benefit* of a participant under a plan may not be decreased by an amendment of the plan . . ." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004), *quoting* 29 U.S.C. §1054(g)(1) (emphasis added). ERISA defines "accrued benefit" as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. §1002(23)(A). "In addition, under §204(g)(2), 29 U.S.C. §1054(g)(2), eliminating or reducing an 'early retirement benefit' or a 'retirement-type subsidy' is to be treated as reducing accrued benefits," subject to the anti-cutback rule. *Arndt v. Sec. Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 540 (7th Cir. 1999). !

On the other hand, it is undisputed that the anti-cutback rule "appl[ies] only to pension benefits, not to welfare benefits," *Tompkins v. Cent. Laborers' Pension Fund*, No. 09-CV-4004,

2011 WL 3746807, at *5 (C.D.Ill. Aug. 25, 2011), *aff'd*, 712 F.3d 995 (7th Cir. 2013), and, as such, "disability benefits can be changed by plan amendment," *Arndt v. Sec. Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 540–41 (7th Cir. 1999). Furthermore, the Seventh Circuit "has held that there exists a presumption against the vesting of benefits unless language in the plan establishes some ambiguity on the issue." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). "If benefits have not vested, the plan participant does not have an unalterable right to those benefits." *Id.*

The parties' dispute as to Count II thus turns on whether the All Work Total Disability benefits at issue here are—as the Fund maintains—welfare benefits not subject to the anti-cutback rule. Notwithstanding Smith's conclusory allegation that "on information, the disability pension is not a welfare benefit subject to discretionary termination," the Court agrees with the Fund. (Dckt. #21 ¶17).

> First, ERISA itself defines an "employee welfare benefit plan" as follows:
>
> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, ***disability***, death or unemployment . . .

29 U.S.C. §1002(1) (emphasis added). "Accordingly, any benefits that are triggered by a disability constitute a welfare benefit, even if they are otherwise part of a pension plan." *Tompkins*, 2011 WL 3746807, at *5 (citing *Anderson v. Suburban Teamsters of Northern Illinois Pension Fund Bd. of Trustees*, 588 F.3d 641, 651 (9th Cir. 2009)). Here, even though the All Work Total Disability benefits are provided for in the Fund's master pension plan, because Smith's disability is the very reason for those benefits, the disability benefits are welfare benefits that are not subject to the anti-cutback rule. *See Arndt*, 182 F.3d at 543 ("Viewed from this

7

angle, the benefit is a disability benefit. The disability is the reason for the benefit."); *Tompkins*, 2011 WL 3746807, at *5 ("The location of the benefit in a master pension plan is not to the contrary . . . nor is the fact that the amount of the benefit is calculated in the same manner as a regular pension benefit"); *Marrs v. Motorola, Inc.*, No. 05 C 5463, 2006 WL 695697, at *3 (N.D.Ill. Mar. 15, 2006) ("As in *Arndt,* Marrs' disability benefit is the service imputed to him while he remains disabled; and, thus, it is a benefit arising out of disability.") (cleaned up). Moreover, Smith points to no ambiguity in the Plan Document with respect to vesting and, as the Fund notes, the Plan's terms in 2002 and 2022 included provisions that set forth when the disability benefits would end.

Finally, for additional support, this Court need look no further than Judge Coleman's opinion in *Smith I*. There, when resolving whether the Fund's termination of Smith's funds was arbitrary and capricious, Judge Coleman acknowledged the "presumption against the vesting of benefits" and stated further that:

> [T]he Fund acknowledges that when Smith applied and was approved for disability benefits, the operative Plan did not require him to have a Social Security Disability Award. ***Nonetheless, there is no dispute that Smith's disability benefits did not vest.*** Thus, under Seventh Circuit precedent, the Fund claims that it was free to modify the eligibility requirements for participants and it did so by amending the Plan to require that participants have a Social Security Disability Award.

*Smith I*, 2022 WL 595706, at *4 (emphasis added). In other words, Judge Coleman already determined—with no apparent dispute from Smith—that Smith's All Work Total Disability benefits did not vest and thus would not be subject to the anti-cutback rule.

What's more, Smith himself acknowledged in *Smith I* that he was not "arguing that his disability benefits [were] indefinitely protected by anti-cutback or anti-forfeiture provisions, nor [did he] argue that once the Fund awarded him disability benefits in 2002, the Fund could . . . never change any of the rules relating to the disability benefits." *Smith I*, Case No. 20-cv-4571,

8

Dckt. #28 at 5 (stating further that he "*does not dispute that Trustees reserve the right to amend plan language per ERISA*, but these amendments may not be arbitrary and capricious.") (emphasis added).

Smith's arguments in *Smith I* and Judge Coleman's decision thus raise implications of collateral estoppel, and potentially even the law of the case doctrine given Judge Coleman's remand of *Smith I*. *See Starr Indem. & Liab. Co. v. Tech. Ins. Co.*, 379 F.Supp.3d 723, 727 (N.D.Ill. 2019) ("Collateral estoppel, or issue preclusion, precludes the relitigation of an issue that has been resolved in a previous lawsuit between the same parties or their privies."); *see also In re Worldcom, Inc.*, 386 B.R. 496, 503 (Bankr. S.D.N.Y. 2008) ("While the [law of the case] doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties."). On this record, the Court rejects Smith's attempt to shift gears and do an about face in this case.

For all of these reasons, Smith has failed to state a claim for violation of ERISA's anti-cutback rule and the Fund's motion to dismiss Count II is granted.

**B. Smith has failed to state a claim for breach of fiduciary duty.**

In Count III, Smith claims that the Fund owed him a fiduciary duty under Section 404 of ERISA, 29 U.S.C. §1104, and breached that duty by: (1) improperly amending the Plan in July 2022 to cut back "accrued plan benefits" in violation of Article XI of the Plan; and (2) applying the July 2022 amendment to deny Smith's continued disability benefits. For the following reasons, these allegations are insufficient to state a claim for breach of fiduciary duty under ERISA.

First, it is well settled that "amendments to plans are not actionable under ERISA's fiduciary obligations." *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 546

(7th Cir. 2022); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–44, (1999). Indeed, the Seventh Circuit has held that "trustees do not act as fiduciaries when they amend a plan's terms" and the "fact that the fiduciaries did not do what Plaintiffs wanted them to do does not give rise to a breach of fiduciary duty claim." *Id*. This alone is a fatal blow to Smith's theory that the Fund breached its fiduciary duty by amending the Plan.

Moreover, any claim for breach of fiduciary for the Fund's termination of Smith's benefits based on the July 2022 amendment (presumably under Section 502(a)(3)) is misplaced because it is duplicative of Smith's claim for the wrongful denial of benefits under Section 502(a)(1)(B) in Count I. As the majority of Circuits (including the Seventh Circuit) have held, "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009).

Finally, Smith's contention that the Fund breached its fiduciary duty because the July 2022 amendment violates Article XI of the plan is also misplaced where that Article, when read in the context of the entire Plan and the analysis herein, *supra* at Section III.A., does not proscribe amendments related to the non-retirement, non-vested All Work Total Disability benefits at issue here.

For these reasons, the Court grants the Fund's motion to dismiss Count III.

## CONCLUSION

For the foregoing reasons, the Fund's motion to dismiss is granted and Counts II and III of plaintiff's amended complaint are dismissed with prejudice given that further amendment would prove futile in light of the above analysis. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (amendment not required

10

"[w]here it is clear that the defect cannot be corrected"). On or before September 24, 2025, the parties shall meet and confer and file a proposed discovery schedule in accordance with the template set forth on the Court's website for Initial Joint Status Reports. The parties shall also indicate whether they have had settlement negotiations and if they are mutually interested in a settlement conference with the assigned Magistrate Judge.

**DATE: September 10, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**